**Walter Lee WILSON, Petitioner,**

v.

**Louis E. BRUCE, et al., Respondents.**

No. 92–3269–DES.

United States District Court,
D. Kansas.

May 6, 1993.

586

Walter Lee Wilson, pro se.

Melanie S. Jack, Kansas Bureau of Investigation, Topeka, KS, for respondents.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate at the Lansing Correctional Facility, was convicted, in 1990, of one count of indecent liberties with a child and sentenced to a term of five to twenty years.

In this action, petitioner challenges his conviction and claims: (1) there was insufficient evidence for a rational factfinder to find him guilty beyond a reasonable doubt; (2) the Board of Paroles of Wyandotte County did not have the authority to sentence petitioner; and (3) the trial court committed reversible error when it overruled petitioner's objection to the statements of the prosecutor during closing argument.

Having reviewed the record in this matter, the court makes the following findings and order.

### Factual Background

In February, 1988, petitioner and his girlfriend, Wanda Shortey were babysitting with Shortey's four-year-old niece. Petitioner and Shortey apparently had the child in their custody on numerous occasions, including at least one extended period of time when the child's mother, Shortey's sister, was incarcerated. Following a visit with the couple, the child reported to her mother that she had been inappropriately touched by petitioner.

The mother contacted the authorities and the child was examined at a hospital emergency room. This gross visual examination, which showed no evidence of trauma, was deemed inconclusive. A second examination was conducted on July 29, 1988, five months after the incident was reported. That examination, which included the use of a colposcope, showed an expanded hymenal opening. The examining physician testified that such a finding could be consistent with repeated dilatation, but also testified that it was impossible to determine when the events had occurred.

There was additional testimony from a Social and Rehabilitation Services social worker and from a psychologist both of whom interviewed the child. They testified that the child said she had been touched by the petitioner.

Petitioner and Shortey not only testified that the touching did not occur, but also gave different versions of how the information about the touching was first elicited. Both indicated that the child's mother repeatedly asked the child if Gene Stewart touched her, or if Bob Brown touched her or if Walter Wilson touched her. Petitioner and Shortey's testimony was that the child initially stated that no one touched her, but that her mother continued to badger her until she identified petitioner as a perpetrator.

Petitioner was convicted and sentenced to a term of five to twenty years. The Kansas Court of Appeals affirmed the conviction on April 10, 1992, 828 P.2d 373 and the Kansas Supreme Court denied petition for review. Petitioner commenced this action on July 22, 1992.

### Discussion

Petitioner first raises a sufficiency of the evidence claim. Petitioner notes that the first medical examination was inconclusive and showed no evidence of trauma. While the second examination five months later was consistent with repeated dilatation, petitioner claims he had not been with the child in the intervening months. Petitioner, therefore, concludes there is insufficient evidence to prove he is the perpetrator of the crime.

■ In federal habeas corpus proceedings, a challenge to the sufficiency of the evidence requires a court to determine whether, after viewing the evidence in the light most favor-

able to the prosecution, any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Cordoba v. Hanrahan,* 910 F.2d 691 (10th Cir.), *cert. denied,* 498 U.S. 1014, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990).

In this case, there was conflicting testimony. Petitioner consistently· asserted no touching occurred; the child testified that it did. Petitioner erroneously concludes that because he had not been around the child between the first exam, which was inconclusive and showed no trauma, and the second exam, which showed repeated dilatation, no rational factfinder could have found him guilty beyond a reasonable doubt.

Petitioner, however, misstates the facts, and makes a leap of logic not warranted by the evidence. Precisely because the first, rather cursory, exam was inconclusive, and the second, more thorough, exam produced results that could not be pinpointed as to date of occurrence, a rational factfinder could have concluded that the evidence did support a conviction. Alternatively, a rational factfinder could have concluded that the evidence did not support a conviction.

▮ In such a case, this court cannot reweigh the evidence nor pass on the credibility of the witnesses and, thereby, substitute its judgment for that of the trial court. *U.S. ex rel. Wandick v. Chrans,* 869 F.2d 1084, 1089 (7th Cir.1989). Petitioner's first issue is without merit.

▮ Petitioner's second claim is that he was illegally sentenced by the Wyandotte County Board of Paroles. As his authority that his sentence must be overturned, petitioner cites *State v. Blackmore,* 15 Kan. App.2d 539, 545, 811 P.2d 54 (1991). The Kansas Court of Appeals held that Blackmore's sentence was illegal because the Board, rather than a single judge, sentenced the defendant. However, in *State v. Blackmore,* 249 Kan. 668, 822 P.2d 49, 52 (1991), the Kansas Supreme Court modified the Court of Appeals holding and determined that as long as a single judge on the Board imposed sentence and signed the journal entry, no statutory error was committed.

In petitioner's case, Judge Dexter Burdette pronounced and imposed sentence and signed the journal entry. Petitioner's sentence was properly imposed.

Petitioner's final claim of prosecutorial misconduct on closing argument is more problematic· and one which this court holds is sufficient to warrant granting the writ.

▮ This court's review of a state prosecutor's allegedly prejudicial remark is limited. *Coleman v. Brown,* 802 F.2d 1227, 1237 (10th Cir.1986), *cert. denied,* 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987). A prosecutor's comment which does not infringe upon a specific constitutional right, such as the presumption of innocence, the burden of proof, or guilt beyond a reasonable doubt, is reviewed to determine whether the conduct complained of made the trial so fundamentally unfair as to deny the petitioner due process. *Mahorney v. Wallman,* 917 F.2d 469, 472 (10th Cir.1990). The touchstone of the due process analysis is the fairness of the trial. *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982). Thus the question which must be asked is whether the prosecutor's statement was so egregious as to render the entire trial fundamentally unfair. *Soap v. Carter,* 632 F.2d 872 (10th Cir.1980), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2021, 68 L.Ed.2d 327 (1981).

The court must determine:

"(1) whether in view of the strength of the evidence against the defendant, the prosecutor's statements plausibly could have tipped the scales in favor of conviction; (2) whether curative instructions given by the trial judge adequately mitigated the effect on the jury of the improper statements; and (3) the probable effect of the jury's ability to judge the evidence fairly." *Girardin v. Pyle,* 752 F.Supp. 979, 982 (D.Colo.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 329, 116 L.Ed.2d 269 (1991), citing *Hopkinson v. Shillinger,* 866 F.2d 1185, 1210 (10th Cir.1989).

▮ In the case before this court, the prosecutor in her final statement to the jury said:

"And I ask you on behalf of the State to send a message to Mr. Wilson that we're

not gonna let him do this to the children in the community." (Tr. 187).

Defense counsel immediately objected and stated:

"The implication there is that there's something else that we're talking about in this case. That's inappropriate argument." (Tr. 187–88).

The trial court denied the objection.

Using the *Girardin* criteria, it is abundantly apparent that: (1) the strength of the state's case was not overwhelming, the testimony was conflicting, the medical evidence was inconclusive, and the petitioner had no contact with the child between the first and second examinations; (2) the trial court gave no curative instructions, and by overruling the objection left the impression that the prosecutor's statement was acceptable and that the trial court approved the remark; and (3) the passion and prejudice of the jury was tapped by a statement that implied if the jurors found petitioner not guilty, they were endangering all the children of the community.

The argument presented by the prosecutor can only be termed an attempt to introduce facts not disclosed by the evidence and to appeal to the fears of the jury concerning the safety of all children in the community. Such an argument was improper and prejudicial to the petitioner's rights. By failing to sustain defense counsel's objection, the trial court left the impression that the jury could consider such statements in its deliberation. And given the far less than overwhelming strength of the State's case, such an appeal to passion could easily have tipped the scales in favor of the prosecution. *See Robinson v. Maynard*, 829 F.2d 1501 (10th Cir.1987).

The court is somewhat mystified by the Kansas Court of Appeals conclusion that the statement made by the prosecutor in petitioner's case was less egregious than the statement uttered by the prosecutor in the leading Kansas case on the subject, *State v. Zamora*, 247 Kan. 684, 803 P.2d 568 (1990). Equally implausible is the court's speculation that the statement could have been taken to mean the jury should not let defendant get away with the charged incident.

In *Zamora*, the prosecutor stated in closing argument:

"He [Zamora] has raped this victim once. If he is found not guilty, he will get away with it again."

Defense counsel promptly objected and the trial court overruled the objection. In his argument on motion for a mistrial, counsel argued that the comments were prejudicial because they did not relate to the evidence of the case and placed an undue burden on the jury to find the defendant guilty lest the crime happen again. *Zamora*, 803 P.2d at 572.

The Kansas Supreme Court found that the prosecutor's statement was improper because it clearly transcended the limits of fair discussion of the evidence and that it was prejudicial error for the trial court to overrule the timely objection by the defense. Further the court found the error was not harmless because there was substantial evidence on both sides of the primary issue of factual dispute, consent. *Id.*, 803 P.2d at 573. The court included an extensive discussion of the responsibilities of prosecutors in closing arguments imposed by the Model Rules of Professional Conduct and the American Bar Association Standards.

Recently, the Kansas Supreme Court addressed the *Zamora* question in *State v. Ruff*, 252 Kan. 625, 847 P.2d 1258 (1993). In that case, defendant was convicted of three counts of aggravated assault. The evidence at trial consisted of the defendant's denial that the assaults had ever occurred and the victims' testimony that the assaults had occurred.

During closing argument, the prosecutor stated:

"Ladies and gentlemen of the jury, do not allow this conduct to be tolerated in our county."

Defense counsel immediately objected calling the statement unfair argument. The trial court stated: "Let's wind it up." The

prosecutor then stated: "Send that message . . . come back with a verdict of guilty."

On appeal defense counsel argued that it was improper for the prosecutor to ask the jury to send a message to the community because it injected an issue which was outside the jury's duty to decide. The State argued that the prosecutor did not intentionally make the comments to inflame the jury and that the comments were vague and did not rise to the level of error requiring reversal.

The Kansas Supreme Court noted that the prosecutor's last statement to the jurors prior to their determination of Ruff's guilt was that the jury had a duty to send a message to the community that such conduct would not be tolerated. The implication was that if they found Ruff not guilty, such conduct would be tolerated. *Id.* at ——, 847 P.2d 1258.

The court reiterated the ABA standards for proper prosecutorial argument articulated in *Zamora;* noted that even the trial court has a duty to insure that counsel does not step outside the bounds of fair argument, *State v. Wilson,* 188 Kan. 67, 360 P.2d 1092 (1961); and held:

> "The prosecutor's statement was improper and transcends the limits of fair discussion of the evidence. The improper remark by the prosecutor in his summation to the jury would not have provided a basis for reversal of Ruff's conviction if the trial judge, rather than approving the remark after defense counsel objected, had instructed the jury to disregard the remark. We are unable to find beyond a reasonable doubt that the prosecutor's misconduct did not deprive the defendant of her constitutional right to a fair trial." *Id.,* 252 Kan. at ——, 847 P.2d 1258.

The court reversed Ruff's conviction and ordered a new trial.

This court finds that the prosecutor's remarks in the instant case were improper and went far beyond the bounds of fair discussion of the evidence. It is unreasonable to believe that jurors who the prosecutor implored to send a message to the petitioner that "we're not gonna let him to *do this* to the *children* in the community" were impervious to the underlying attempt to capitalize on their fear that other children would be harmed if petitioner were found not guilty. The jury was clearly being called to determine something beyond the scope of the charged incident.

This court finds that petitioner was denied a fair trial and that his federal constitutional right to due process was violated. Further the court finds that the error was not harmless beyond a reasonable doubt. Federal constitutional errors that are harmless beyond a reasonable doubt do not require reversal. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In deciding whether the improper remarks constitute harmless error, the court must find that the error had little, if any, likelihood of changing the result of the trial and the court must declare that belief beyond a reasonable doubt. This the court cannot do.

This court is unable to find, beyond a reasonable doubt, that the prosecutor's misconduct did not deprive the petitioner of his constitutional right to a fair trial. To the contrary the court finds petitioner's trial was rendered fundamentally unfair by the improper comments of the prosecutor, the trial judge's failure to sustain defense counsel's objection to the remarks, and the probable fear, instilled in the jury by the prosecutor's comments, that other children would be harmed if petitioner was found not guilty.

The petitioner did not receive a fair trial and should be afforded a new trial.

IT IS THEREFORE BY THE COURT ORDERED that the petition for writ of habeas corpus is granted. The State must provide petitioner a new trial within 120 days or release him.